## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 4:22-cv-143 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EDER O. PARRA, | ) | |
| KENIA M. FLORES BLANCO, | ) | |
| BMT RENTAL ENTERPRISES, LLC, | ) | |
| BRISA MAURO FLORES, | ) | |
| VINCENT GALBAN, | ) | |
| NORMA PATINO, | ) | |
| NADINE GARCIA, | ) | |
| ANA CASTILLO, | ) | |
| JEWEL CASTILLO, | ) | |
| JOSE SANTIAGO OJEDA GOMEZ, | ) | |
| ISMAEL ROMAN ROMERO, | ) | |
| KELLY ROMERO, | ) | |
| COLLECTION DEPARTMENT OF | ) | |
| JACKSON COUNTY, MISSOURI, and | ) | |
| MISSOURI DEPARTMENT OF REVENUE, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

The United States, for its complaint against defendants, alleges as follows:

1.     The United States brings this action to (a) reduce to judgment joint federal income tax liabilities assessed against Eder O. Parra ("Parra") and Kenia M. Flores Blanco ("Flores"); (b) reduce to judgment a civil penalty assessed against Parra pursuant to 26 U.S.C. § 6721; (c) obtain a judgment enforcing federal tax liens against the subject real properties described below (collectively, "Properties"); and (d) obtain an order directing the sale of the Properties, with the proceeds from such sales to be paid to the United States to be applied toward Parra's and Flores' unpaid federal tax liabilities.

2.     This civil action has been requested and authorized by the Chief Counsel of the Internal Revenue Service and is brought at the direction of a delegate the Attorney General of the United States pursuant to 26 U.S.C. §§ 7401 and 7403(a).

## Jurisdiction and Venue

3.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. §§ 7402 and 7403.

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Parra and Flores reside in this district and the Properties are all located in this district.

## Parties

5.     Plaintiff is the United States of America.

6.     Defendant Parra resides in Pleasant Hill, Missouri, and is subject to the personal jurisdiction of this Court.

7.     Defendant Flores is Parra's spouse. She resides in Pleasant Hill, Missouri, and is subject to the personal jurisdiction of this Court.

8.     Defendant BMT Rental Enterprises, LLC ("BMT") is registered as a limited liability company with the Missouri Secretary of State and is subject to the jurisdiction of this Court. BMT is named as a party defendant to Counts IV, V, and VI of this complaint, because it is the entity that nominally holds or held title to several of the Properties.

9.     Defendant Brisa Mauro Flores ("Brisa Flores") is Flores' adult daughter. She resides in Pleasant Hill, Missouri, and is subject to the personal jurisdiction of this Court. Brisa Flores is named as a party defendant only to Count V of this complaint pursuant to 26 U.S.C. § 7403(b), because she may claim an interest in one or more of the Properties.

10.     Defendant Vincent Galban resides in Kansas City, Missouri, and is subject to the personal jurisdiction of this Court. He is named as a party defendant to Count III of this complaint pursuant to 26 U.S.C. § 7403(b) because he may claim an interest in one or more of the Properties.

11.     Defendant Norma Patino resides in Kansas City, Missouri, and is subject to the personal jurisdiction of this Court. She is named as a party defendant to Count III of this complaint pursuant to 26 U.S.C. § 7403(b) because she may claim an interest in one of the Properties.

12.     Defendant Nadine Garcia resides in Raytown, Missouri, and is subject to the personal jurisdiction of this Court. She is named as a party defendant to Count IV of this complaint pursuant to 26 U.S.C. § 7403(b) because she may claim an interest in one or more of the Properties.

13.     Defendant Ana Castillo resides in Raytown, Missouri, and is subject to the personal jurisdiction of this Court. She is named as a party defendant to Count V of this complaint pursuant to 26 U.S.C. § 7403(b) because she may claim an interest in one or more of the Properties.

14.     Defendant Jewel Castillo resides in Raytown, Missouri, and is subject to the personal jurisdiction of this Court. She is named as a party defendant to Count V of this complaint pursuant to 26 U.S.C. § 7403(b) because she may claim an interest in one or more of the Properties.

15.     Defendant Jose Santiago Ojeda Gomez resides in Raytown, Missouri, and is subject to the personal jurisdiction of this Court. He is named as a party defendant to Count VI of

this complaint pursuant to 26 U.S.C. § 7403(b) because he may claim an interest in one or more of the Properties.

16.     Defendant Ismael Roman Romero ("Ismael Romero") resides in Olathe, Kansas, and he is currently a titleholder of one or more of the Properties, which are located within this judicial district. He is named as a party defendant to Count VI of this complaint pursuant to 26 U.S.C. § 7403(b), because he may claim an interest in one or more of the Properties.

17.     Defendant Kelly Romero resides in Olathe, Kansas, and she is currently a titleholder of one or more of the Properties, which are located within this judicial district. She is named as a party defendant to Count VI of this complaint pursuant to 26 U.S.C. § 7403(b), because she may claim an interest in one or more of the Properties.

18.     The Collection Department of Jackson County, Missouri, is the department responsible for, *inter alia*, accounting for and collecting assessed real property taxes for Jackson County, Missouri. It has an office at 415 E. 12th Street, Suite 100, Kansas City, Missouri 64106. It is named as a party defendant to Counts III, IV, V, and VI of this complaint pursuant to 26 U.S.C. § 7403(b), because it may claim interests in one or more of the Properties.

19.     The Missouri Department of Revenue is named as a party defendant to Counts III, IV, V, and VI of this complaint pursuant to 26 U.S.C. § 7403(b), because it may claim interests in one or more of the Properties.

**COUNT I: Judgment Against Parra and Flores for
Unpaid Assessed Joint Federal Income Tax Liabilities**

20.     The United States incorporates by reference the allegations set forth in ¶¶ 1 through 7 above.

4

21.     Parra and Flores filed joint federal income tax returns with the Internal Revenue Service ("IRS") for tax years 2011, 2012, 2013, and 2014. For 2011, Parra and Flores also filed an amended federal income tax return with the IRS.

22.     On their joint income tax returns for 2011 through 2014 (including on their amended joint return for 2011), Parra and Flores reported income taxes due, but for each of these years they failed to fully pay the amount that they reported as due.

23.     On the dates listed in the table below, a delegate of the Secretary of the Treasury made assessments against Parra and Flores for income taxes, interest, and penalties. The amounts due for each tax year, including assessed interest and other statutory additions, reduced for payments and other credits, through February 23, 2022, are also stated in the table below.

| Tax Year | Initial Assessment Date | Unpaid Balance as of Feb. 23, 2022 |
|----------|------------------------|-----------------------------------|
| 2011 | 09/24/2012 | $44,754.74 |
| 2012 | 11/25/2013 | $86,286.39 |
| 2013 | 06/22/2015 | $46,797.59 |
| 2014 | 11/16/2015 | $11,633.61 |
| *Total Unpaid Balance Due as of Feb. 23, 2022*: $189,472.33 | | |

24.     The assessments identified in ¶ 23 above were made in accordance with law.

25.     The IRS gave Parra and Flores notice of the federal income tax assessments identified in ¶ 23 above and made demands for payment on or about the date of each assessment.

26.     Parra and Flores have failed to fully pay the federal income tax liabilities assessed against them.

5

27.     Accordingly, Parra and Flores are jointly and severally liable to the United States for their federal income tax liabilities for tax years 2011 through 2014 in the total amount of $189,472.33 through February 23, 2022.

28.     Interest and other statutory additions will continue to accrue on the amounts owed to the United States until the balances due are paid in full.

WHEREFORE the United States respectfully requests that the Court enter judgment on Count I of this complaint as follows:

A.     Enter judgment against Parra and Flores, jointly and severally, for their 2011, 2012, 2013, and 2014 federal income tax liabilities in the amount of $189,472.33, plus further statutory interest and additions to tax accruing after February 23, 2022, until the judgment is paid in full; and

B.     Grant the United States such other relief as is just and equitable, including the costs incurred in the commencement and prosecution of this suit.

## COUNT II: Judgment Against Parra for Unpaid Assessed Civil Penalty

29.     The United States incorporates by reference the allegations set forth in ¶¶ 1 through 6 above.

30.     During tax year 2013, Parra was the sole proprietor of a construction business known as EMP Contractors, LLC ("EMP Contractors").

31.     On Schedule C (Profit or Loss from Business) attached to Parra's and Flores' 2013 joint federal income tax return, they reported that EMP Contractors paid contract labor expenses of $541,851.

32.     As sole proprietor of EMP Contractors, Parra was required to file information returns with the IRS identifying payments made of $600 or more in the course of EMP's

business, as well as the names and addresses of the recipients of such payments. *See* 26 U.S.C. § 6041. This included, *inter alia*, information returns setting forth the amounts paid by EMP Contractors for contract labor expenses during 2013.

33.     Parra failed to timely file accurate information returns regarding payments made by EMP Contractors in tax year 2013 as required by 26 U.S.C. § 6041(a).

34.     On March 28, 2016, a delegate of the Secretary of the Treasury assessed a civil penalty of $900.00 against Parra pursuant to 26 U.S.C. § 6721 ("Section 6721 Penalty Assessment"). As of February 23, 2022, the balance due for the Section 6721 Penalty Assessment (including assessed and accrued interest) is $1,152.34.

35.     The Section 6721 Penalty Assessment was made in accordance with law.

36.     The IRS gave Parra notice of the Section 6721 Penalty Assessment and made a demand for payment on or about the date of the Assessment.

37.     Parra has failed to pay the Section 6721 Penalty Assessment.

38.     Accordingly, Parra is indebted to the United States for the Section 6721 Penalty Assessment identified in ¶ 34 above in the total amount of $1,152.34 through February 23, 2022.

39.     Interest and other statutory additions will continue to accrue on the amounts owed to the United States until the balance due is paid in full.

WHEREFORE the United States respectfully requests that the Court enter judgment on Count II of this complaint as follows:

A.     Enter judgment against Parra for the Section 6721 Penalty Assessment identified in ¶ 34 above in the total amount of $1,152.34, plus further interest and other statutory additions accruing after February 23, 2022, until the judgment is paid in full; and

7

B.      Grant the United States such other relief as is just and equitable, including the costs incurred in the commencement and prosecution of this suit.

**COUNT III: Enforcement of Federal Tax Liens Against Topping Avenue Property**

40.     The United States incorporates by reference the allegations set forth in ¶¶ 1 through 7, 10, 11, and 18 through 39 above.

41.      By general warranty deed dated September 11, 2002, Parra acquired real property located at 404 Topping Avenue, Kansas City, Missouri (**"Topping Avenue Property"**), within this judicial district. The Topping Avenue Property is legally described as follows:

The North 35 feet of the South 70 feet of the East Half of that part of Lot 17, lying between Lawndale Avenue and Topping Avenue, OAKLEY, a subdivision in Kansas City, Jackson County, Missouri, according to the recorded plat thereof.

42.     Upon information and belief, Defendant Vincent Galban is a tenant of the Topping Avenue Property.

43.     Upon information and belief, Defendant Norma Patino is a tenant of the Topping Avenue Property.

44.     By virtue of the assessments, notices thereof, and demands for payment as described in ¶¶ 20 through 39 of this complaint, and Parra's and Flores' failure to pay, federal tax liens arose as of the dates of the assessments pursuant to 26 U.S.C. §§ 6321 and 6322. These federal tax liens attached to all of Parra's and Flores' property and rights to property, including the Topping Avenue Property.

45.     On the dates set forth below, the IRS filed Notices of Federal Tax Liens regarding Parra's and Flores' unpaid assessed federal tax liabilities in Jackson County, Missouri.

8

| Liability Type | Tax Year | Notice of Federal Tax Lien Filed |
|---|---|---|
| Joint federal income tax | 2011 | April 1, 2014 |
| | 2012 | April 1, 2014 |
| | 2013 | May 9, 2017 |
| | 2014 | May 9, 2017 |
| Section 6721 Penalty | 2013 | May 9, 2017 |

46.     The federal tax liens described in ¶ 44 above attached to and should be enforced against the Topping Avenue Property and the Property sold pursuant to Court order. *See* 26 U.S.C. § 7403(c).

WHEREFORE the United States respectfully requests that the Court enter judgment on Count III of this complaint as follows:

A.      Declare that the federal tax liens described in ¶ 44 are valid and subsisting liens in favor of the United States that attached to all property and rights to property of Parra and Flores, including the Topping Avenue Property, as of the dates of the assessments identified in ¶¶ 23 and 34 of this complaint;

B.      Order that the federal tax liens be enforced against all Parra's property and rights to property, including the Topping Avenue Property;

C.      Determine the rights of the parties in the Topping Avenue Property;

D.      Order that if any of the defendants claim an interest in the Topping Avenue Property senior to the federal tax liens, then such defendant shall affirmatively demonstrate the priority of their interest;

E.      Order that any person occupying the Topping Avenue Property shall leave and vacate the Property;

F.     Order that the Topping Avenue Property be sold in a judicial sale according to law, free and clear of any right, title, lien, claim, or interest of any other lien holders, and that the proceeds of the sale be distributed to the parties in such amounts as the Court determines; and

G.     Award the United States such other relief as is just and equitable, including the costs incurred in the commencement and prosecution of this suit.

## COUNT IV: Enforcement of Federal Tax Liens Against 56th Street Property

47.     The United States incorporates by reference the allegations set forth in ¶¶ 1 through 8, 12, 18 through 39, 44, and 45 above.

48.     By special warranty deed dated January 7, 2013, Parra acquired real property located at 10116 E. 56th Street, Raytown, Missouri (**"56th Street Property"**), within this judicial district. The 56th Street Property is legally described as follows:

THAT PART OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 33, TOWNSHIP 49, RANGE 32, RAYTOWN, JACKSON COUNTY, MISSOURI, DESCRIBED AS FOLLOWS: BEGINNING AT THE

INTERSECTION OF THE WEST RIGHT-OF-WAY LINE OF MAYWOOD STREET AND THE NORTHERLY RIGHT-OF-WAY LINE OF 56TH STREET AS BOTH ARE NOW ESTABLISHED; THENCE NORTHWESTERLY ALONG THE NORTHERLY RIGHT-OF-WAY LINE OF THE 56TH STREET 82.0 FEET TO A POINT; THENCE NORTHERLY 150.50 FEET TO A POINT; THENCE EASTERLY 80.0 FEET TO A POINT ON THE WEST RIGHT-OF-WAY

LINE OF MAYWOOD STREET; THENCE SOUTH ALONG THE SAID WEST RIGHT-OF-WAY LINE OF MAYWOOD STREET 170.22 FEET TO THE POINT OF BEGINNING.

49.     By filing tax returns reporting federal income tax due, but also failing to pay those liabilities – as described in ¶¶ 21 and 22 above – Parra and Flores knew or should have known that they would incur substantial federal tax debts.

50.     As early as September 24, 2012, the IRS began sending Parra and Flores notices of the assessments and demands for payment regarding their unpaid assessed joint federal income taxes.

51.     Moreover, as early as January 7, 2013, the IRS sent notices to Parra and Flores stating that the IRS could pursue collection activities regarding their unpaid tax liabilities through the filing of Notices of Federal Tax Liens and/or administrative levies.

52.     On or about March 12, 2014, Parra formed BMT by filing a one-page "Articles of Organization" with the Missouri Secretary of State.

53.     On the "Articles of Organization" filed for BMT, BMT's purpose is listed as "collecting rent from rental prperties [sic]."

54.     On the "Articles of Organization" filed for BMT, Parra is identified as BMT's sole organizer and registered agent.

55.     On information and belief, Parra is also BMT's sole member.

56.     As sole organizer and sole member of BMT, Parra exercises complete control over any assets titled in BMT's name, such that Parra and BMT are indistinct.

57.     BMT has never filed a tax return reporting any income or expenses.

58.     Parra and Flores have reported income and expenses associated with real properties titled in BMT's name on their joint personal income tax returns.

59.     BMT is a legal fiction formed to shift assets out of the name(s) of Parra and Flores and obstruct collection of their tax debts, including their joint federal income tax liabilities.

60.     On April 17, 2014, Parra and Flores signed a quitclaim deed that purported to transfer title to the 56th Street Property to BMT.

61.     BMT paid no compensation to Parra or Flores for the transfer of the 56th Street Property.

62.     The purported transfer of the 56th Street Property occurred 16 days after the IRS filed a Notice of Federal of Tax Lien regarding Parra's and Flores' 2011 and 2012 joint federal income tax liabilities with the Jackson County Recorder's office. (*See* ¶ 45 *supra*.)

63.     The April 17, 2014 quitclaim deed regarding the 56th Street Property was not recorded with the Jackson County Recorder's office until August 15, 2014, several months after the purported transfer.

64.     Following the transfer of the 56th Street Property to BMT, Parra and Flores were insolvent, because they had insufficient assets to pay the federal income tax liabilities that had been assessed against them, as well as additional federal tax liabilities that they could reasonably expect to become due in the near future.

65.     Parra and Flores remain the beneficial owners of the 56th Street Property following the transfer of title to BMT.

66.     Despite the purported transfer to BMT, Parra and Flores continue to exercise complete dominion and control over the 56th Street Property.

67.     Parra and/or Flores have arranged to lease the 56th Street Property to renters, and they enjoy exclusive control over all rental payments made for the 56th Street Property.

68.     Upon information and belief, Defendant Nadine Garcia is a tenant of the 56th Street Property.

69.     Parra and Flores reported on their 2014 federal income tax return that they paid the expenses for insurance, taxes, and utilities regarding the 56th Street Property in that year.

70.     Parra and Flores caused the 56th Street Property to be placed in BMT's name to thwart the IRS's collection efforts regarding their unpaid federal tax liabilities.

71.     Because a Notice of Federal Tax Lien regarding Parra's and Flores' 2011 and 2012 joint federal income tax liabilities was recorded prior to the transfer date of April 17, 2014, to the extent that BMT can be shown to have taken title to the 56th Street Property, it did so subject to the United States' federal tax liens. *See* 26 U.S.C. § 6323(a).

72.     As described in ¶¶ 60 through 69 above, the transfer of the 56th Street Property to BMT was a fraudulent transfer within the meaning of Mo. Rev. Stat. § 428.024 because it was made with the actual intent to hinder, delay, or defraud the United States in collecting Parra's and Flores' federal tax debts.

73.     Because the transfer of the 56th Street Property to BMT was fraudulent, it should be set aside.

74.     In the alternative, BMT holds bare legal title to the 56th Street Property as Parra's and Flores' nominee and/or alter ego.

75.     The federal tax liens regarding Parra's and Flores' federal tax liabilities, including those assessed after the transfer date of April 17, 2014 should be deemed attached and enforced against the 56th Street Property.

WHEREFORE the United States respectfully requests that the Court enter judgment on Count IV of this complaint as follows:

A.      Declare that the transfer of the 56th Street Property to BMT was a fraudulent transfer made with the actual intent to hinder, delay, or defraud the United States in collecting Parra's and Flores' federal tax liabilities;

13

B.    Declare that BMT holds the 56th Street Property as Parra's and Flores' nominee and/or alter ego;

C.    Declare that the federal tax liens described in ¶ 44 above are valid and subsisting liens in favor of the United States that attached to all property and rights to property of Parra and Flores, including the 56th Street Property, as of the dates of the assessments identified in ¶¶ 23 and 34 of this complaint;

D.    Order that the federal tax liens be enforced against all Parra's and Flores' property and rights to property, including the 56th Street Property;

E.    Determine the rights of the parties in the 56th Street Property;

F.    Order that if any of the defendants claim an interest in the 56th Street Property senior to the federal tax liens, then such defendant shall affirmatively demonstrate the priority of their interest;

G.    Order that any person occupying the 56th Street Property shall leave and vacate the Property;

H.    Order that the 56th Street Property be sold in a judicial sale according to law, free and clear of any right, title, lien, claim, or interest of any other lien holders, and that the proceeds of the sale be distributed to the parties in such amounts as the Court determines; and

I.    Award the United States such other relief as is just and equitable, including the costs incurred in the commencement and prosecution of this suit.

**COUNT V: Enforcement of Federal Tax Liens Against 87th Street Property**

76.    The United States incorporates by reference the allegations set forth in ¶¶ 1 through 9, 13, 14, 18 through 39, 44, 45, and 49 through 59 above.

14

77.     By general warranty deed dated February 15, 2011, Flores and Brisa Flores acquired real property located at 7800 E. 87th Street, Raytown, Missouri (**"87th Street Property"**), within this judicial district. The 87th Street Property is legally described as follows:

**LOT 21, ALTA VISTA ACRES, A SUBDIVISON IN PARTIALLY IN KANSAS CITY, PARTIALLY IN RAYTOWN, AND WHOLLY IN JACKSON COUNTY, MISSOURI ACCORDING TO THE RECORDED PLAT THEREOF.**

78.     On February 15, 2011, Brisa Flores was 10 years old.

79.     The transferor of the 87th Street Property under the February 15, 2011 deed was Brigida Barrera-Ramirez. On information and belief, Brigida Barrera-Ramirez is Parra's mother.

80.     From February 15, 2011 through April 17, 2014, Flores and Brisa Flores were the sole titleholders of the 87th Street Property.

81.     On April 17, 2014, Flores, Brisa Flores, and Parra signed a quitclaim deed purporting to transfer title to the 87th Street Property to BMT.

82.     On April 17, 2014, Brisa Flores was 13 years old.

83.     The purported transfer of the 87th Street Property to BMT occurred 16 days after the IRS filed a Notice of Federal of Tax Lien regarding Parra's and Flores' 2011 and 2012 joint federal income tax liabilities with the Jackson County Recorder's office. (*See* ¶ 45 *supra*.)

84.     The April 17, 2014 quitclaim deed regarding the 87th Street Property was not recorded with the Jackson County Recorder's office until August 15, 2014, several months after the purported transfer.

85.     BMT paid no compensation to Flores or Brisa Flores for the transfer of the 87th Street Property.

86.     Following the transfer of the 87th Street Property to BMT, Parra and Flores were insolvent, because they had insufficient assets to pay the federal income tax liabilities that had

15

been assessed against them, as well as additional federal tax liabilities that they could reasonably expect to become due in the near future.

87.     Parra and Flores remain the beneficial owners of the 87th Street Property following the transfer of title to BMT.

88.     Despite the purported transfer to BMT, Parra and Flores continue to exercise complete dominion and control over the 87th Street Property.

89.     Parra and/or Flores have arranged to lease the 87th Street Property to renters, and they enjoy exclusive control over all rental payments made for the 87th Street Property.

90.     Upon information and belief, Defendant Ana Castillo is a tenant of the 87th Street Property.

91.     Upon information and belief, Defendant Jewel Castillo is a tenant of the 87th Street Property.

92.     Parra and Flores reported on their 2014 federal income tax return that they paid the expenses for insurance, taxes, and utilities regarding the 87th Street Property during that year.

93.     Parra and Flores caused the 87th Street Property to be placed in BMT's name to thwart the IRS's collection efforts regarding their unpaid federal tax liabilities. Nevertheless, the United States' federal tax liens attached to and may now be enforced against the 87th Street Property.

94.     Because a Notice of Federal Tax Lien regarding Parra's and Flores' 2011 and 2012 joint federal income tax liabilities was recorded prior to the transfer date of April 17, 2014, to the extent that BMT can be shown to have taken title to the 87th Street Property, it did so subject to the United States' federal tax liens. *See* 26 U.S.C. § 6323(a).

16

95.     As described in ¶¶ 81 through 92 above, the transfer of the 87th Street Property to BMT was a fraudulent transfer within the meaning of Mo. Rev. Stat. § 428.024 because it was made with the actual intent to hinder, delay, or defraud the United States in collecting Parra's and Flores' federal tax debts.

96.     Because the transfer of the 87th Street Property to BMT was fraudulent, it should be set aside.

97.     In the alternative, BMT holds bare legal title to the 87th Street Property as Parra's and Flores' nominee and/or alter ego.

98.     The federal tax liens regarding Parra's and Flores' federal tax liabilities, including those assessed after the transfer date of April 17, 2014 should be deemed attached and enforced against the 87th Street Property.

WHEREFORE the United States respectfully requests that the Court enter judgment on Count V of this complaint as follows:

A.      Declare that the transfer of the 87th Street Property to BMT was a fraudulent transfer made with the actual intent to hinder, delay, or defraud the United States in collecting Parra's and Flores' federal tax liabilities;

B.      Declare that BMT holds the 87th Street Property as Parra's and Flores' nominee and/or alter ego;

C.      Declare that the federal tax liens described in ¶ 44 above are valid and subsisting liens in favor of the United States that attached to all property and rights to property of Parra and Flores, including the 87th Street Property, as of the dates of the assessments identified in ¶¶ 23 and 34 of this complaint;

D.      Order that the federal tax liens be enforced against all Parra's and Flores' property and rights to property, including the 87th Street Property;

E.      Determine the rights of the parties in the 87th Street Property;

F.      Order that if any of the defendants claim an interest in the 87th Street Property senior to the federal tax liens, then such defendant shall affirmatively demonstrate the priority of their interest;

G.      Order that any person occupying the 87th Street Property shall leave and vacate the Property;

H.      Order that the 87th Street Property be sold in a judicial sale according to law, free and clear of any right, title, lien, claim, or interest of any other lien holders, and that the proceeds of the sale be distributed to the parties in such amounts as the Court determines; and

I.      Award the United States such other relief as is just and equitable, including the costs incurred in the commencement and prosecution of this suit.

## **COUNT VI: Enforcement of Federal Tax Liens Against Kentucky Avenue Property**

99.     The United States incorporates by reference the allegations set forth in ¶¶ 1 through 8, 15 through 39, 44, 45, and 49 through 59 above.

100.    By special warranty deed dated October 26, 2012, Parra acquired real property located at 8612 Kentucky Avenue, Raytown, Missouri ("**Kentucky Avenue Property**"), within this judicial district. The Kentucky Avenue Property is legally described as follows:

LOT 38, EXCEPT THE NORTH 1 FOOT THEREOF AND EXCEPT THE SOUTH 10 FEET THEREOF, GRAYMONT, A SUBDIVISION IN RAYTOWN, JACKSON COUNTY, MISSOURI.

101.    Parra was the sole titleholder of the Kentucky Avenue Property from October 26, 2012 to April 17, 2014.

102.     On April 17, 2014, Parra and Flores signed a quitclaim deed that purported to transfer title to the Kentucky Avenue Property to BMT.

103.     The purported transfer of the Kentucky Avenue Property occurred 16 days after the IRS filed a Notice of Federal of Tax Lien regarding Parra's and Flores' 2011 and 2012 joint federal income tax liabilities with the Jackson County Recorder's office. (*See* ¶ 45 *supra*.)

104.     The April 17, 2014 quitclaim deed regarding the Kentucky Avenue Property was not recorded with the Jackson County Recorder's office until August 15, 2014, several months after the purported transfer.

105.     BMT paid no compensation to Parra or Flores for the transfer of the Kentucky Avenue Property.

106.     Following the transfer of the Kentucky Avenue Property to BMT, Parra and Flores were insolvent, because they had insufficient assets to pay the federal income tax liabilities that had been assessed against them, as well as additional federal tax liabilities that they could reasonably expect to become due in the near future.

107.     Parra and Flores were the beneficial owners of the Kentucky Avenue Property following the transfer of title to BMT.

108.     Despite the purported transfer to BMT, Parra and Flores continued to exercise complete dominion and control over the Kentucky Avenue Property after the transfer of the Property.

109.     Parra and/or Flores arranged to lease the Kentucky Avenue Property to renters, and they enjoyed exclusive control over all rental payments made for the Kentucky Avenue Property.

110.    Upon information and belief, Defendant Jose Santiago Ojeda Gomez is a tenant of the Kentucky Avenue Property.

111.    Parra and Flores reported on their 2014 federal income tax return that they paid the expenses for insurance, taxes, and utilities regarding the Kentucky Avenue Property during that year.

112.    Parra and/or Flores also caused BMT to attempt to transfer title to the Kentucky Avenue Property to Defendant Ismael Romero.

113.    On August 22, 2017, Parra and Ismael Romero signed a quitclaim deed purporting to transfer title to the Kentucky Avenue Property to Ismael Romero.

114.    The August 22, 2017 quitclaim deed was defective and did not transfer title to Ismael Romero, because Parra, as BMT's representative, failed to sign the deed as grantor.

115.    On October 7, 2017, Ismael Romero was advised that that the United States' tax liens had attached to the Kentucky Avenue Property.

116.    Ismael Romero claims to have paid $25,000 in cash to Parra to purchase the Kentucky Avenue Property.

117.    Ismael Romero could not provide any documentation or other evidence of the alleged cash payment to the IRS.

118.    During 2017, the assessed value of the Kentucky Avenue Property (as determined by the Jackson County Assessor) was $84,000.

119.    On November 2, 2017, Parra and Ismael Romero signed a second deed regarding the Kentucky Avenue Property. Specifically, on that date, Parra and Ismael Romero signed a warranty deed purporting to transfer title to the Kentucky Avenue Property from BMT as grantor to Ismael Romero.

Case 4:22-cv-00143-BCW    Document 1    Filed 03/02/22    Page 20 of 24

120.    On November 2, 2017, Ismael Romero had actual knowledge of the federal tax liens regarding Parra's and Flores' unpaid federal tax liabilities.

121.    Parra and Flores caused the Kentucky Avenue Property to be placed in BMT's name and subsequently caused BMT to transfer title to the Kentucky Avenue Property to Ismael Romero to thwart the IRS's collection efforts regarding their unpaid federal tax liabilities.

122.    The United States' federal tax liens regarding Parra's and Flores' unpaid assessed federal tax liabilities attached to the Kentucky Avenue Property as of the dates of the assessments identified in ¶ 23 and 34 above and may now be enforced against the Kentucky Avenue Property.

123.    Because a Notice of Federal Tax Lien regarding Parra's and Flores' 2011 and 2012 joint federal income tax liabilities was recorded prior to the transfer date of April 17, 2014, BMT took title to the Kentucky Avenue Property subject to the United States' federal tax liens regarding these two tax years. *See* 26 U.S.C. § 6323(a).

124.    As described in ¶¶ 102 through 111 above, the transfer of the Kentucky Avenue Property to BMT was a fraudulent transfer within the meaning of Mo. Rev. Stat. § 428.024 because it was made with the actual intent to hinder, delay, or defraud the United States in collecting Parra's and Flores' federal tax debts.

125.    Because the transfer of the Kentucky Avenue Property was fraudulent, it should be disregarded and set aside.

126.    In the alternative, BMT held bare legal title to the Kentucky Avenue Property as Parra's and Flores' nominee and/or alter ego.

127.    Ismael Romero is not a purchaser of the Kentucky Avenue Property within the meaning of 26 U.S.C § 6323(a) and (h)(6), because he did not take legal title to the Kentucky

Avenue Property until November 2, 2017, *i.e.*, almost a month after learning about the federal tax liens that were attached to the Property.

128. Ismael Romero is not a purchaser of the Kentucky Avenue Property within the meaning of 26 U.S.C § 6323(a) and (h)(6), because he can produce no evidence of the payment he purportedly made to Parra for the Kentucky Avenue Property.

129. Ismael Romero is not a purchaser of the Kentucky Avenue Property within the meaning of 26 U.S.C § 6323(a) and (h)(6), because, even if he did pay $25,000 for the Kentucky Avenue Property, that amount was not full and adequate consideration for the Property. *See* 26 U.S.C § 6323(h)(6).

130. Accordingly, the United States' federal tax liens are superior to any interest that Ismael Romero may claim in the Kentucky Avenue Property.

131. On December 19, 2019, Ismael Romero signed a deed purporting to transfer title to the Kentucky Avenue Property to himself and Kelly Romero as joint tenants with rights of survivorship.

132. Kelly Romero paid no compensation to Ismael Romero in connection with the December 19, 2019 transfer.

133. Kelly Romero is also not a purchaser within the meaning of 26 U.S.C. §6323(a) and (h)(6).

134. Accordingly, the United States' federal tax liens are superior to any interest that Kelly Romero may claim in the Kentucky Avenue Property.

WHEREFORE the United States respectfully requests that the Court enter judgment on Count VI of this complaint as follows:

A.    Declare that the transfer of the Kentucky Avenue Property to BMT was a fraudulent transfer made with the actual intent to hinder, delay, or defraud the United States in collecting Parra's and Flores' federal tax liabilities;

B.    Declare that BMT held the Kentucky Avenue Property as Parra's and Flores' nominee and/or alter ego;

C.    Declare that the federal tax liens described in ¶ 44 above are valid and subsisting liens in favor of the United States that attached to all property and rights to property of Parra and Flores, including the Kentucky Avenue Property, as of the dates of the assessments identified in ¶¶ 23 and 34 of this complaint;

D.    Order that the federal tax liens be enforced against all Parra's and Flores' property and rights to property, including the Kentucky Avenue Property;

E.    Determine the rights of the parties in the Kentucky Avenue Property;

F.    Order that if any of the defendants claim an interest in the Kentucky Avenue Property senior to the federal tax liens, then such defendant shall affirmatively demonstrate the priority of their interest;

G.    Order that any person occupying the Kentucky Avenue Property shall leave and vacate the Property;

H.    Order that the Kentucky Avenue Property be sold in a judicial sale according to law, free and clear of any right, title, lien, claim, or interest of any other lien holders, and that the proceeds of the sale be distributed to the parties in such amounts as the Court determines; and

I.    Award the United States such other relief as is just and equitable, including the costs incurred in the commencement and prosecution of this suit.

Dated:  March 2, 2022

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/Eric M. Aberg*
ERIC M. ABERG
D.C. Bar #1044111
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6451
Fax: (202) 514-6770
Eric.M.Aberg@usdoj.gov

TERESA A. MOORE
Acting United States Attorney